UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANTHONY KIPP-GALATTI,<br>Defendant. | No. 2:25-cr-00239-DC-1<br><br>ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS<br><br>(Doc. Nos. 53, 55) |

This matter came before the court on October 30, 2026, for a hearing on Defendant's motion to suppress Defendant's statements to Vietnamese and U.S. law enforcement agents (Doc. No. 53) and motion to suppress evidence obtained from the warrantless search of Defendant's cellular phone. (Doc. No. 55.) Attorney Douglas Beevers appeared on behalf of Defendant. (Doc. No. 71.) Assistant U.S. Attorneys Nchekube Onyima and William Clayman appeared on behalf of the Government. (*Id.*) For the reasons stated below, the court will deny Defendant's motions to suppress.

**BACKGROUND**

On October 23, 2025, a grand jury returned an indictment charging Defendant Anthony Kipp-Galatti with one count of engaging in illicit sexual conduct, as defined in 18 U.S.C. § 2423(g), in a foreign place, and attempting to do so, in violation of 18 U.S.C. § 2423(c) and (f). (Doc. No. 1 at 1–2.) Specifically, the indictment alleges that Defendant, a United States citizen,

traveled to Vietnam between November 2019 and July 26, 2020, where he knowingly engaged in illicit sexual conduct with a person under the age of 18 who was at least four years younger than Defendant. (*Id.*)

On July 29, 2026, Defendant filed the pending motion to suppress his allegedly involuntary statements. (Doc. No. 53 at 1.) Therein, Defendant argues that the written statement he provided to Vietnamese law enforcement on July 28, 2020 is inadmissible as the product of coercive interrogation tactics. (*Id.*) Specifically, Defendant alleges that Vietnamese law enforcement handcuffed Defendant to a stairway for approximately 16 hours throughout the course of multiple interrogations and refused to provide him access to an attorney despite him being entitled to one under Vietnamese law.[1] (*Id.* at 1–2.) Defendant further argues that he is entitled to an evidentiary hearing under *Kastigar v. United States*, 406 U.S. 441 (1972) to determine whether his subsequent interview with U.S. Homeland Security Investigations ("HSI") officers, which occurred approximately nine months after the written statement was obtained, was "shape[d], alter[ed], or affect[ed]" by that allegedly coerced written statement. (*Id.* at 3.)

On July 31, 2026, Defendant filed the pending motion to suppress evidence obtained from the warrantless search of Defendant's cellular phone in April 2021. (Doc. No. 55.) Therein, Defendant argues that Vietnamese law enforcement seized his cell phone without a warrant in violation of Vietnamese law, and that HSI officers formed a joint venture with the Vietnamese law enforcement agents to conduct a forensic search of the unlawfully seized phone. (*Id.* at 1–2.) Specifically, Defendant alleges that his cell phone was seized by Vietnamese law enforcement agents incident to his arrest on July 28, 2020. (*Id.* at 1.) On November 24, 2020 the HSI's Acting Country Attaché to Vietnam, My Bach, sent Vietnamese law enforcement agents a letter titled "Proposed Coordination in a Child Exploitation Investigation in Nha Trang City, Khanh Hoa, Vietnam," in which he acknowledges that the Vietnamese law enforcement "seized [Defendant's]

---

[1] At the hearing on this matter, Defendant clarified that he was provided with an attorney at some point during the interrogation and prior to him providing the written statement at issue in his motion. The court need not determine when Defendant was provided with an attorney because whether Defendant was provided with an attorney at some point during this interrogation does not impact the court's analysis.

U.S. passport and multiple digital devices in [Defendant's] possession" and offers the United States's "assistance in this investigation" including by, as relevant here, "performing a forensic data extraction of [Defendant's] digital devices and analysis pursuant to Vietnamese authorities and laws." (Doc. No. 55-1 at 2, 3.) Mr. Bach requested to meet with Vietnamese law enforcement on either December 28, 2020 or December 31, 2020, to discuss the case. (*Id.* at 3.) On January 25, 2021, HSI sent a follow up letter through Country Attaché Cory Dunne in which Mr. Dunne acknowledges Mr. Bach's November letter and indicates that Vietnamese law enforcement responded by letter on January 19, 2021, requesting specifics as to who would be participating in the investigation and welcoming HSI's "technical assistance in this case." (Doc. No. 55-2 at 3.) Mr. Dunne proposed a meeting in late February 2021 to discuss the case and to "[i]mage and conduct forensic analysis of the seized digital devices/media." (*Id.*) In an affidavit supporting the Government's application for a search warrant of a separate phone seized incident to Defendant's 2025 arrest in the United States, HSI Special Agent Tyler Breeding attests that in "late March or early April 2021," HSI agents did meet with Vietnamese law enforcement officers and "examin[ed] a white 128 GB Transcend MicroSD XC . . . memory card that was inserted into [Defendant's] cell phone."[2] (Doc. No. 55-3 at 7.) Mr. Breeding attests that HSI discovered incriminating photographs on that memory card. (*Id.*)

On September 2, 2026, the Government filed an omnibus opposition to Defendant's motions to suppress. (Doc. No. 59.) As to Defendant's motion to suppress his allegedly involuntary statement, the Government argues Defendant's motion is moot because "the government does not intend to introduce in its case-in-chief the [D]efendant's written statement (or any oral statements that he may have made) to Vietnamese law enforcement." (Doc. No. 59 at 7.) The Government additionally reserved the right to "seek to introduce the written statement during cross-examination in the event the defendant chooses to testify at trial." (*Id.* at 7 n.3.) The Government further argues that Defendant's subsequent interview with HSI agents in May 2021

---

[2] The court understands this search of Defendant's memory card to be the subject of Defendant's pending motion. There is no indication that HSI accessed information located on Defendant's phone apart from the information located on this external memory card.

is admissible as attenuated from the allegedly coerced statement. (*Id.* at 8–9.)

As to Defendant's motion to suppress the evidence obtained from the search of Defendant's memory card, the Government argues that search was not conducted pursuant to a joint venture between HSI and Vietnamese law enforcement such that the only relevant question is whether HSI's search of that memory card was reasonable under Fourth Amendment standards. (*Id.* at 12–13.) The Government further argues that, even if the court finds the two law enforcement agencies engaged in a joint venture, Vietnamese law enforcement's assurance that its examination would be "in compliance with Vietnamese laws and international practices" is sufficient for application of the good-faith exception to the exclusionary rule. (*Id.* at 15) (quoting Doc. No. 59-2 at 2.)

On October 9, 2026, Defendant filed his reply in support of his motion to suppress his involuntary statements arguing that the motion to suppress the initial involuntary statement given to Vietnamese authorities was not moot merely because the Government indicated it did not intend to introduce the statement at trial. (Doc. No. 66 at 3.) Defendant further argues that the subsequent interview with HSI agents was not attenuated from the involuntary written statement because the "HSI interrogation was conducted pursuant to a joint investigation into allegations of a crime which is an offense under both Vietnamese and United States laws." (*Id.* at 5.)

On October 15, 2026, Defendant filed his reply in support of his motion to suppress the search of his memory card arguing that HSI was not entitled to rely on Vietnamese law enforcement's assurance that the investigation would be conducted in accordance with Vietnamese law because "[g]ood faith reliance on the Vietnamese Ministry of Public Security is not possible during a year in which the U.S. State Department Country Report for Vietnam in 2021 reported that the Vietnamese Ministry of Public Security routinely disregarded Vietnamese law." (Doc. No. 68 at 3.) Defendant further contends that American and Vietnamese law enforcement did form a joint venture because "Vietnam and the U.S. have both signed the Optional Protocol to the Rights of the Child" which supports "U.S. jurisdiction over sex crimes committed in other countries" and that by "this treaty both countries agreed to cooperate in investigating this sort of crime." (*Id.* at 5.) Defendant further argues that a joint venture existed

because HSI "gave a copy of the results of his forensic search to the Vietnamese police and kept one [copy] for U.S. law enforcement," "H.S.I. asked for permission to interview the victim and [Defendant]," and the "Vietnamese police gave H.S.I. many documents to assist in H.S.I.'s investigation including forensic reports and the signed interview statement." (*Id.* at 6.)

On October 30, 2026, the parties appeared before the court for a hearing on the pending motions. (Doc. No. 71.) The court permitted the Government to file a supplemental opposition addressing two questions agents posed during Defendant's interview with U.S. law enforcement that Defendant argued—for the first time at the hearing on this matter—were questions derived from information solicited at his involuntary interview with Vietnamese law enforcement. (*Id.*) On November 6, 2026, the Government filed that supplemental opposition. (Doc. No. 72.)

On November 19, 2026, Defendant filed a declaration clarifying certain statements he made at the October 30 hearing on this matter. (Doc. No. 74.) Because Defendant filed that declaration without leave of court three weeks after the matter was taken under submission, the court declines to consider its contents in this order.

## LEGAL STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A defendant subjected to a warrantless search and seizure that does not comport with his Fourth Amendment rights may move to suppress the unlawfully obtained evidence at trial. Fed. R. Crim. P. 41(h). Unless an exception applies, any unlawfully obtained evidence cannot be introduced at trial against the person whose Fourth Amendment rights were violated. *USA v. Bohannon*, 506 F. Supp. 3d 907, 912–13 (N.D. Cal. 2020) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).

## ANALYSIS

### A. Motion to Suppress Involuntary Statement

#### 1. Statement to Vietnamese Law Enforcement

Defendant contends that his July 2020 written statement is inadmissible as a coerced statement because on the night the statement was given, Defendant was "chained to a stairway for

approximately 16 hours and subjected to multiple interrogations" while being unlawfully denied access to an attorney. (Doc. No. 53 at 1.) In its opposition, the Government argues that Defendant's motion is moot as to this first written statement because the Government does not intend to introduce it in its case-in-chief. (Doc. No. 59 at 7.) The Government reserves its right, however, to seek to introduce the statement for impeachment purposes if Defendant testifies at trial. (*Id.* at 7 n.3.)

Indeed, a motion to suppress is rendered moot where the Government indicates that it will not seek admission of the subject evidence at trial. *United States v. Butler*, No. 23-cr-00449-SI-1, 2024 WL 3447505, at *1 (N.D. Cal. July 16, 2024) ("Based upon the government's representation that it does not seek to introduce the text messages, the Court concludes that defendant's motion is moot.") (citing *United States v. Kahre*, 737 F.3d 554, 565 (9th Cir. 2013)). Thus, the court will deny Defendant's motion to suppress his July 2020 written statement to Vietnamese law enforcement based on the Government's representation that it will not seek to admit that statement at trial. That denial will be without prejudice to Defendant renewing his objection should the Government seek to introduce the written statement for impeachment, or any other purpose. *See United States v. Sarfo*, No. 2:23-cr-00132-APG-EJY, 2024 WL 3706678, at *1 (D. Nev. May 14, 2024) ("The Court finds it appropriate to leave to trial the issue of whether evidence seen during the [subject search] may be used for impeachment purposes in the unlikely event the Government attempts to introduce such evidence following testimony by a Defendant.").

2. <u>Subsequent Interview with U.S. Law Enforcement</u>

While Defendant's motion to suppress his written statement to Vietnamese law enforcement is rendered moot by the Government's assurance that it will not seek to introduce that statement at trial, this does not render moot Defendant's motion to suppress evidence derived from that allegedly coerced statement, including, as Defendant contends, his subsequent interview with HSI officers. *United States v. Azano Matsura*, 129 F. Supp. 3d 975, 981 (S.D. Cal. 2015) (analyzing separately evidence that the government indicated it would not introduce at trial and evidence derived therefrom). The court assumes for the purpose of this order that Defendant's

initial written statement to Vietnamese law enforcement was inadmissible as a coerced statement.

"When a statement is claimed to be inadmissible as the product of a prior coerced confession the issue is solely one of voluntariness." *United States v. Schmidt*, 573 F.2d 1057, 1062 (9th Cir.), *cert. denied*, 489 U.S. 881 (1978). As the Supreme Court clarified:

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. . . . In such a sense, a later confession always may be looked upon as fruit of the first. But this court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

*United States v. Bayer*, 331 U.S. 532, 540–41 (1946). Factors that courts consider in determining whether a statement made subsequent to an involuntary statement is admissible include: "(1) a break in the stream of events sufficient to insulate the statement from the effect of all that went on before; (2) inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances; (3) the time that passes between confessions, the change in the place of interrogations, and the change in identity of the interrogators; and (4) removal of the conditions which preclude the use of the first statement." *United States v. Patterson*, 812 F.2d 1188, 1192 (9th Cir. 1987) (citation modified).

Here, all four factors weigh in favor of finding that Petitioner's May 2021 interview with HSI was voluntary. First, there was a complete break in the "stream of events" sufficient to insulate Defendant's interview with American law enforcement from his allegedly coerced interview with Vietnamese law enforcement. Specifically, following his allegedly coercive interview Defendant was released from custody and travelled freely from the scene of that interview in Nha Trang to his home in Ho Chi Minh City. (Doc. No. 59 at 6.) Further, in his interview with American authorities, Defendant emphasized that he is aware that the time for Vietnamese authorities to bring charges against him has expired under Vietnamese law such that he knows that the same authorities who conducted his initial interview could not lawfully be conducting his second. (Doc. No. 70 at 21:00; 32:40.) Finally, Defendant emphasizes his belief that the HSI agents are treating him fairly and impartially in comparison with the "incompetent"

Vietnamese authorities. (*Id.* at 22:35.) Thus, there exists a complete break in the stream of events between Petitioner's initial coercive interview and his subsequent interview.

Second, Defendant produces no evidence and offers no argument indicating an "inference as to the continuing effect of the coercive practices" on his subsequent interview. Defendant argues that the "ordinary assumption is that HSI was assisting the Vietnamese in the prosecution of a Vietnamese criminal case under local Vietnamese law" such that "[a]ll of the threats that had been made to him in previous interrogations would have applied to [Defendant's] decision to talk to HSI agents who were presumably helping the Nha Trang police in a Vietnamese criminal case." (Doc. No. 66 at 5.) However, as discussed above, in his interview with American law enforcement Defendant repeatedly states his experience with them is favorable as compared to his experience with Vietnamese law enforcement and compliments their competence in comparison with Vietnamese law enforcement. Thus, there is no suggestion in the evidence before the court that Defendant assumed that HSI was working in coordination with, or under the direction of, Vietnamese law enforcement.

Third, the change in time, location, and interviewers all weigh in favor of finding that Defendant's subsequent interview was voluntary. Specifically, the subsequent interview occurred approximately nine months after the allegedly coercive interview in a separate city to which Defendant freely travelled. Further, none of the Vietnamese law enforcement agents who were present at the allegedly coercive interview were present at the subsequent interview, and Defendant does not allege that the HSI agents who conducted the subsequent interview were present at his initial interview. Thus, the third factor weighs in favor of finding that Petitioner's interview with U.S. law enforcement was voluntary.

Fourth, the conditions upon which Defendant contends his initial interview was coercive were not present at his subsequent interview. Specifically, Defendant alleges that at his initial interview he was handcuffed to a stairway for an extended period and was refused counsel in violation of Vietnamese law. However, as confirmed at the hearing on this matter, Defendant was represented by counsel at the time of his subsequent interview. Indeed, in the audio recording of his interview, Defendant acknowledges that he is appearing voluntarily contrary to the advice of

his counsel. (Doc. No. 70-1 at 00:10.) Further, Defendant's interview with American law enforcement took place at a busy coffee shop across the street from the U.S. consulate in Ho Chi Minh City; he was not confined in a Vietnamese police station as in his interview with Vietnamese law enforcement.

Thus, consideration of all four factors identified in *Patterson* weigh in favor of finding that Defendant appeared voluntarily for his interview with U.S. law enforcement, and that to the extent Defendant's written statement to Vietnamese law enforcement was coerced, that coercion was attenuated from the subsequent interview. Accordingly, the court will deny Defendant's motion to suppress statements made in his interview with U.S. law enforcement.[3]

**B. Motion to Suppress Warrantless Search of Defendant's Phone**

Defendant contends that the Government's warrantless search in April 2021 of the external memory card inserted into Defendant's cell phone violated his Fourth Amendment right against unreasonable search and seizure. (Doc. No. 55 at 4.) Defendant acknowledges that "the Fourth Amendment exclusionary rule does not [generally] apply to acts of foreign officials," but emphasizes that it "does apply to searches where there is a joint venture between United States and foreign law enforcement." (*Id.*) (citing *United States v. Barona*, 56 F.3d 1087, 1092–93 (9th

---

[3] In his motion, Defendant seeks an evidentiary hearing pursuant to *Kastigar v. United States*, 408 U.S. 931 (1972), to confirm that U.S. law enforcement's "review of the compelled testimony did not shape, alter, or affect the evidence used by the government." (Doc. No. 53 at 3.) Defendant's reliance on *Kastigar* is inapposite. As the Government emphasizes in its opposition, the Court in *Kastigar* addressed a defendant who previously testified under a grant of statutory immunity, holding that "the government has the burden to prove . . . that any evidence it intends to use against the defendant is derived from a legitimate source independent of the immunized statements." (Doc. No. 59 at 8) (quoting *United States v. Dudden*, 65 F.3d 1461, 1468 (9th Cir. 1995) (citing *Kastigar*, 406 U.S. at 461–62)). In *Dudden*, the Ninth Circuit emphasized that a *Kastigar* hearing was necessary in the context of a defendant's immunity claim because where the government promises a defendant that his statements will not be used against him, "it is also precluded from using the statements to uncover other incriminating evidence, unless the agreement expressly provides otherwise." *Dudden*, 65 F.3d at 1468. Here, on the other hand, in the context of admissibility of a statement allegedly influenced by a previously coerced statement, the admissibility of the latter statement "is solely [an issue] of voluntariness." *Schmidt*, 573 F.2d at 1062. Thus, because Defendant's interview with U.S. law enforcement was sufficiently attenuated from his initial involuntary statement so as to render the latter statement voluntary, the court need not determine whether, and to what extent, the Government relied on information obtained in the initial statement in conducting the latter interview.

Cir. 1995).

Indeed, "[n]either our Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials." *Borona*, 56 F.3d at 1090 (citation omitted). There are exceptions to this general rule, including where, as relevant here, "United States agents' participation in the investigation is so substantial that the action is a joint venture between United States and foreign officials." *Id.* at 1091 (citation omitted). Where such a joint venture does exist, "compliance with foreign law alone determines whether the search violated the Fourth Amendment." *Id.* at 1092 n.1 (citation omitted). Where no such joint venture exists, but U.S. law enforcement does conduct a search of a U.S. citizen in foreign territory, that search must be reasonable under the Fourth Amendment. *See U.S. v. Juda*, 46 F.3d 961, 968 (9th Cir. 1995) ("We agree [] that the Fourth Amendment's reasonableness standard applies to United States officials conducting a search affecting a United States citizen in a foreign country."). Thus, to determine whether HSI's search of Defendant's memory card was permitted under the Fourth Amendment, the court must first determine whether that search was conducted pursuant to a joint venture with Vietnamese authorities. If such a joint venture existed, the court must determine whether the search was conducted in compliance with Vietnamese law. If no such joint venture existed, the court must determine whether the search was reasonable under the Fourth Amendment.

1. Joint Venture

Defendant contends that HSI and Vietnamese authorities' investigation into Defendant constituted a joint venture such that Vietnamese law controls the reasonableness of HSI's warrantless search of Defendant's memory card. (Doc. No. 55 at 2–5.) The Government argues that because HSI did not "direct or substantially participate in Vietnam's investigation," no joint venture existed. (Doc. No. 59 at 13) (citation modified).

The Fourth Amendment applies to actions by foreign agents "only if Federal agents so substantially participated in the [search] so as to convert them into joint ventures between the United States and the foreign officials." *Stonehill v. United States*, 405 F.2d 738, 743 (9th Cir. 1968). "To decide whether a joint venture has occurred, the court must closely scrutinize the

attendant facts." *United States v. Rose*, 570 F.2d 1358, 1362 (9th Cir. 1978). Where "there is only minimal or limited interaction, there is no joint venture." *United States v. McVicker*, 979 F. Supp. 2d 1154, 1180 (D. Ore. 2013) (citing *Schmidt*, 573 F.2d 1057 at 1063).

In the instances where a joint venture is found, courts have emphasized the repeated and consistent cooperation between U.S. and foreign law enforcement agencies. For example, in *United States v. Peterson*, 812 F.2d 486 (9th Cir. 1987), the court found that the warrantless wiretap of an American citizen living in the Philippines constituted a joint venture between U.S. and Philippine law enforcement agencies where the U.S. agents "termed their actions a 'joint investigation' in their own testimony," were "involved daily in translating and decoding intercepted transmissions, as well as advising the Philippine authorities of their relevance," and "treated the affair as one in which the marijuana was destined for the United States, and so assumed a substantial role in the case." 812 F.2d at 490; *see also United States v. Emery*, 591 F.2d 1266, 1268 (9th Cir. 1978) (finding a joint venture existed where American authorities "alerted the Mexican police of the possible activity, coordinated the surveillance at the [] airport, supplied the pilot for the plane and gave the signal that instigated the arrest"). A joint venture has not been found, on the other hand, where the two investigations run parallel to one another, with minimal coordination between the entities. For example, in *Rose* the Ninth Circuit found no joint venture existed where U.S. officials "neither ordered nor directed the search" and "did not participate in it" and where there was "no evidence that United States agents were attempting to undermine the Fourth Amendment rights of a citizen by circuitous and indirect methods." *Rose*, 570 F.2d at 1362.

Here, Defendant does not allege that HSI directed or participated in the allegedly warrantless seizure of Defendant's cell phone or otherwise participated in the investigation leading up to its seizure. Thus, Defendant appears to challenge HSI's April 2021 warrantless search of Defendant's seized phone, not the seizure of the phone itself. Indeed, the earliest alleged communication between HSI and Vietnamese authorities regarding Defendant was the November 2020 letter Mr. Bach sent to Vietnamese authorities approximately four months after Vietnamese authorities seized Defendant's cell phone incident to his arrest. (Doc. No. 55-1.) Defendant

alleges that the extent of HSI's coordination with Vietnamese law enforcement regarding that search was that "Special Agent Bach did [the] examination by himself after his offer of assistance in the case was accepted by the Vietnamese authorities," then "provided his results of his forensic examination to Vietnamese authorities and kept a copy." (Doc. No. 68 at 1–2.) Defendant additionally clarifies that at the time HSI searched the memory card, "the time limit for an uncharged investigation in a serious criminal case in Vietnam had expired," such that Mr. Bach could only lawfully search the phone for the benefit of the U.S. investigation. (Doc. No. 55 at 2.) At the hearing on this matter, Defendant was unable to name any authorities holding that a search was conducted pursuant to a joint venture where the investigation of one of the agencies allegedly a member to the joint venture had expired. Further, the minimal coordination between HSI and Vietnamese authorities surrounding the search of Defendant's memory card does not present the same recurring coordination generally found in a joint venture. Thus, the court finds that no joint venture between Vietnamese and U.S. law enforcement existed at the time HSI searched Defendant's phone. Accordingly, the reasonableness of HSI's search is governed under a Fourth Amendment reasonableness analysis rather than exclusively by compliance with Vietnamese law.

2. Reasonableness

Before law enforcement may conduct a search, the Fourth Amendment requires that "a search warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 469 (2011). A search warrant, however, cannot govern searches conducted on foreign soil. *See U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 274 (1990) (noting that a warrant lawfully issued by a magistrate judge in the United States "would be a dead letter outside the United States"). Where "the practical realities of a particular situation suggest that a government official cannot obtain a search warrant based upon probable cause" the court must "turn to a 'balancing' test to formulate a standard of reasonableness for this context." *O'Connor v. Ortega*, 480 U.S. 709, 741 (1987) (Blackmun, J., dissenting). What is reasonable under the Fourth Amendment "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *U.S. v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). When considering whether a law enforcement action is reasonable, the court must "balanc[e] its intrusion on the individual's

Fourth Amendment interests against its promotion of legitimate government interests." *Id.* (citation omitted).

Here, the court must weigh Defendant's Fourth Amendment protected right to the privacy of the data contained in his external memory card against the Government's legitimate interest in searching that memory card absent the ability to obtain a search warrant to do so. In his motion, Defendant does not analyze the reasonableness of the HSI search aside from its compliance with Vietnamese law because he contends that the search was conducted pursuant to a joint venture. (Doc. No. 55 at 5) ("Since the search of the [memory card] was unlawful under Vietnamese law it was unreasonable under the Fourth Amendment."). However, in both his reply and at the hearing on this matter, Defendant argued that "it was unreasonable under the Fourth Amendment for U.S. police to search cellular phones without a warrant" because Defendant's cell phone undoubtedly contained private communications, records, and documents not relevant to HSI's investigation. (Doc. No. 68 at 4) (citing *Riley v. California*, 573 U.S. 373 (2014)). Notably, Defendant's argument ignores that HSI searched an external memory card inserted into his cell phone, not the cell phone itself. As the Government emphasized at the hearing on this matter, there is no indication that Defendant's private communications or other personal records contained in his cell phone would be accessible through a search of his external memory card. Indeed, in his interview with HSI, Defendant repeatedly expressed concern that Vietnamese authorities might find private communications and written materials located in his emails, Trello account, or Google Drive account. (Doc. No. 70 at 33:40.) There is no indication those documents or communications were accessible through the external memory card. Thus, although Defendant undoubtedly has a privacy interest in the contents of the external memory card, that interest is substantially smaller than his interest in the contents of his cell phone itself. *See Riley*, 573 U.S. 373 at 394, 397 (finding unconstitutional the warrantless search of a cell phone obtained incident to arrest absent exigent circumstances because "a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record" and because "officers searching a phone's data would not typically know whether the information they are viewing was stored locally at the time

of the arrest or has been pulled from the cloud").

As to the Government's interest in searching Defendant's memory card, Defendant stated during his interview with HSI that both he and the alleged victim used his cell phone throughout their encounter. (Doc. No. 70-1 at 38:25.) Thus, the Government had substantial interest in reviewing the external memory drive to determine whether any evidence of that encounter—for example, photographs or videos—were contained on the drive. *See United States v. Brobst*, 558 F.3d 982, 993–94 (9th Cir. 2009) (holding valid a search warrant authorizing search and seizure of photographs, computers, hard drives, memory cards, printers, and other data storage devices based on witnesses' observation of one illicit photograph in the defendant's home). Further, Vietnamese law enforcement explicitly confirmed to HSI that "all investigation activities will be carried out by the Police of Viet Nam in compliance with Vietnamese laws and international practices."[4] Thus, HSI could have reasonably inferred that Vietnamese law enforcement obtained all documents required to lawfully search and seize Defendant's memory card in Vietnam, thereby rendering their search of Defendant's memory card more reasonable. *Peterson*, 812 F.2d 486 at 492 (holding that American law enforcement agents could rely on foreign law enforcement's assurances of compliance with foreign law because they "were not in an advantageous position to judge whether the search was lawful, as would have been the case in a domestic setting" such that holding "them to a strict liability standard for failings of their foreign associates would be even more incongruous than holding law enforcement officials to a strict liability standard as to the adequacy of domestic warrants").

Thus, the court finds that the Government's search of Defendant's external memory drive was reasonable under the Fourth Amendment and will deny Defendant's motion to suppress the

---

[4] The Government additionally argues that this assurance mandates that, if the court were to find the search of Defendant's memory card was unlawful, the resulting evidence remains admissible under the good faith exception to the exclusionary rule. (Doc. No. 59 at 12) (citing *United States v. Ferguson*, 508 F. Supp. 2d 1, 6 (D.D.C. 2007) ("The good faith exception to the exclusionary rule applies if United States law enforcement agents have a reasonable belief that the foreign nation's laws were complied with."). Because the court finds that the search of Defendant's memory card was lawful, it need not address whether it was exempted from the exclusionary rule under the good faith exception.

results of that search.

**CONCLUSION**

For the reasons stated above,

1. Defendant's motion to suppress involuntary statements (Doc. No. 53) is DENIED as follows:
   a. Defendant's motion to suppress the written statement provided to Vietnamese law enforcement is DENIED WITHOUT PREJUDICE to Defendant renewing his objection should the Government seek to introduce the statement as impeachment evidence at trial;
   b. Defendant's motion to suppress statements made during his interview with American law enforcement is DENIED; and
2. Defendant's motion to suppress the evidence obtained from the warrantless search of his cell phone memory card (Doc. No. 55) is DENIED.

IT IS SO ORDERED.

Dated: **November 23, 2026**

Dena Coggins
United States District Judge